The Commonwealth *against* BARKER.

*Philadelphia,*
*Monday,*
March 29.

THIS was a *habeas corpus* to *James N. Barker*, a captain in the *United States'* army, to bring up the body of *John Butcher*, detained in his custody, and to certify the cause of his detainer.

The return to the writ stated, that the defendant had the body of *Butcher* before the Court, and that he detained him by virtue of an enlistment as a soldier in the army of the *United States* on the 17th of *August* 1812, the consent of his master *Philip Le Fevre*, in writing, having been first obtained.

The writ was prosecuted at the instance of *Butcher*, by the managers of the almshouse and house of employment of *Philadelphia*, who on the 12th of *March* 1810, had bound him as an apprentice to *Le Fevre*, for seven years, seven months and three days, to learn the art and mystery of a cordwainer, under a stipulation in the indenture, that it was not to be assigned without the consent of the managers for the time being. At the time of the enlistment, *Butcher* was between fifteen and sixteen years of age.

A minor under
the age of eigh-
teen, bound by
the managers of
the almshouse
as an apprentice
to a mechanic,
who covenanted
not to *assign* the
indenture with-
out the consent
of the mana-
gers, may with
the consent of
his master in
writing, and
without the con-
sent of the ma-
nagers, be en-
listed as a sol-
dier in the army
of the United
States.

*S. Ewing* for the managers of the almshouse, contended that the enlistment was void for three reasons. 1. Because the act of congress of the 11th of *January* 1812, does not permit the enlistment of minors under the age of eighteen. 2. Because if it does, it is under the condition of the *consent* in writing of the parent, guardian or master; and by the terms of this indenture, the master could give no consent. 3. Because

VOL. V.           3 H

by the common law such a contract by an infant is void; and congress cannot give it validity.

1. The eleventh section prohibits the enlistment of any person under *twenty-one*, without the consent of his parent, guardian or master, in writing; and gives the sum of two dollars to the commissioned officers in the recruiting service, for every able bodied man they may enlist between *eighteen* and forty-five, with a proviso that the regulation as to age shall not extend to musicians, or to soldiers who may re-enlist. That is, they may enlist them as *musicians* and not otherwise, under eighteen, and may re-enlist soldiers above forty-five. Musicians must be enlisted specifically as such, for they have higher pay than the privates. *Butcher* was enlisted as a common soldier.

2. The master had no authority to give consent. His was not the general power of guardian or parent, nor even the ordinary power of master. He could not assign to another mechanic, because it would have been against his covenant. His right to the boy's service was special, and connected with a continuance in the original employment. The moment this right to service was assigned, the indenture ceased, and the apprentice became free. What is consent to an enlistment, but consent to a transfer of service, in other words, to an assignment? Congress call for the consent of him who has a plenary controul over the service of the minor. The master had not. The managers themselves had not. They are to put out to some trade or calling, which no one can suppose includes the trade of war. The commonwealth alone is the guardian of this boy, and has the complete right to dispose of his service.

3. The contract as to the minor, is clearly void at common law. It therefore does not bind in the present case, unless congress have a constitutional right to remove the disabilities of infancy or coverture, and to make children independent of their parents, and wives of their husbands. No such power has been given by the states. They may raise armies from among the adults. They cannot shake a principle of the common law of the states, in relation to the personal disabilities of infants. These are privileges, not defects; and congress cannot take them away.

*Dallas*, district attorney of the *United States*, answered,

1. That no act of congress contained any limitation of age, under which a minor should not be enlisted. If musicians may be enlisted under eighteen, so may every soldier of the army; for musicians are without exception enlisted as soldiers, that being the generic name of all who are enlisted, and the distribution into musicians, non-commissioned officers and privates, cavalry, infantry, and artillery, being a matter of subsequent arrangement. It follows from the authority to enlist persons under eighteen for musicians, that there is an authority to enlist them as soldiers. The eleventh section speaks of the age, merely with reference to the compensation of the recruiting officer, not with reference to his authority. All that is prescribed on the subject of age by any act of congress, is, that if under twenty-one, there must be the consent of the parent &c. Act *U. S.* 16 *Mar.* 1802. 6 *U. S. Laws* 17., Act 12 *Apr.* 1808. 9 *U. S. Laws* 91.

2. In permitting enlistments under twenty-one, congress have taken care to do no violence to private rights. They suppose every minor to have a parent, guardian, or master, who has an interest in, or is entitled to dispose of, his service; and if no wrong is done to them, there is no wrong. Who was entitled to the service of *Butcher?* Not the managers, for they executed their power by the indenture. The master alone had a full, absolute right, to the service of the boy till twenty-one. His inability to assign is nothing. The *United States* do not claim by assignment or transfer. They claim by the contract of the boy, his master consenting that his private rights shall not stand in the way. Suppose the guardian to consent: does he assign, or transfer? No, his consent is required, to shew that he withdraws any claim that he may have; not that he conveys or transfers it.

3. The right of congress to authorise the enlistment of minors under these circumstances, is plain, from the terms of the constitution, and the practice of all the states. They have power to raise armies, constituent parts of which, under the practice of every military state, are boys. They are wanted particularly in the musical department; and the power to contract for this, implies the whole. In every section of the union, military duty is required from eighteen to forty-five. Every where then the law disregards minority

1813.

COMMON-
WEALTH
v.
BARKER.

upon the question of military service. And the argument therefore is, that what a minor is bound to do in this respect, by his natural allegiance and the laws of his state, congress cannot authorise him to bind himself to do. The act of congress takes away no right; it merely communicates a capacity, which we are bound to suppose is not injurious to the minor, which we know is essential to the country, and to the exercise of a right granted by the constitution.

TILGHMAN C. J. *John Butcher*, who is now about the age of sixteen years, was bound apprentice by the managers of of the almshouse and house of employment of the city and county of *Philadelphia*, to *Philip Le Fevre*, to learn the art and mystery of a cordwainer. On the 17th of *August* last he was enlisted as a soldier in the army of the *United States*, the consent of his master in writing having been previously obtained. These facts are set forth in the return to the *habeas corpus*, and are not disputed.

By the act of congress of the 11th of *January* 1812, it is provided that no person under the age of twenty-one years shall be enlisted or held in the service of the *United States*, " without the consent in writing of his parent, guardian, or " master first had and obtained, if any he have." The managers of the almshouse derive their authority from an act of assembly of *Pennsylvania*. The indenture contains an engagement on the part of the master, not to assign it without the consent of the managers. I do not consider the master's consent to the boy's going into the army, as an assignment of the indenture. Still it would be unwarrantable unless justified by the act of congress. In the first place then this act is to be considered. There is no affirmative direction as to the age of the persons to be enlisted. But from the proviso which I have mentioned, there can be no doubt of an intention to authorise the enlistment of minors, with the consent of their parents, masters or guardians. If the minor has a parent living, and is not bound to a master, the consent of the parent is necessary; if the parent is dead, and there is a guardian, his consent must be obtained. But whether there be a parent or guardian, if the minor is bound to a master, the consent of the master *alone* is sufficient. Upon the first reading of the beginning of the eleventh section of the act, I had doubts

whether the authority to enlist minors was not limited to those above the age of eighteen years, because a premium of two dollars is given to officers who shall enlist " an effective " able bodied man for the term of five years, (*and between the* " *ages of eighteen and forty-five years*) provided nevertheless " that this regulation so far as respects the age of the recruit, " shall not extend to musicians, or to those soldiers who may " re-enlist into the service." But upon reflection I am satisfied that this part of the act was not intended to restrict the enlistment of soldiers to persons between the ages of eighteen and forty-five, but was only a regulation of the compensation to be allowed to officers in the recruiting service. It appears that all recruits, whether intended for musicians or otherwise, are enlisted under the general name of *soldiers;* and it does not lie with the recruiting officer, but with his superiors, to designate the service in which the recruit shall be employed; so that if none but *musicians* could be enlisted under the age of eighteen, it would be impossible to say whether the enlistment was binding or not, because the recruiting officer could not tell, whether the recruit would be employed as a musician. Besides, in the latter part of the same section which designates the age, *under which,* the consent of the parent &c. is to be obtained, the expression is general, *no person under the age of twenty-one &c.* But it has been urged, that whatever may have been the intent of the act, congress has no power to authorise the enlisting of a minor, because at common law a minor cannot bind himself, and by the laws of *Pennsylvania,* minors who have no friends to support them, are put under the protection of the managers of the almshouse. But although minors of this description are so far placed under the care of the managers, that they have power to bind them out to useful trades, yet when this duty is performed, the authority of the managers ceases. I do not mean to say that the managers have not a right to see that the covenants of the master are performed, and to interfere in case he undertakes to assign the indenture without their consent. But the legislature of *Pennsylvania* has never made any law prohibiting the *enlistment* of minors with consent of their masters. Should they do so, it would produce a painful conflict with the *United States.* We are now however to decide upon the law as it stands. Congress have

power to raise armies, and of course to pass laws necessary for that purpose. They have said that a minor who has a master, may be enlisted with his own consent and the consent of his master. The parent or guardian having transferred their power to the master, the persons whose rights are principally to be regarded are the minor and the master. Now when their consent is attained, can it be said that there is any thing so monstrously unreasonable in authorising an enlistment, that the law shall be declared to be *of no effect?* I cannot say that it appears so to me. Consider the consequences of such a decision. A very important portion of the strength of the country is under the age of twenty-one years. It may be of vast importance that this force should be employed in the regular army. And why should it not be so employed with the consent of the minors and of those persons, whether parents, guardians or masters, who by the laws of society had acquired previous rights to their service? As an individual I am no friend to war. Under the most prosperous circumstances, it is one of the greatest evils that can befall us. But until the nature of man is changed, there will be war, and it is essential that every nation should be so organized as to be able to exert its strength upon necessary occasions. I can have no doubt therefore but that upon a candid construction of the constitution of the *United States,* congress have power to go as far as they have gone by the present act, that is to say, to authorise the enlistment of a minor, the consent of his master in writing having been previously obtained. I am therefore of opinion that *John Butcher* should be remanded to the custody of captain *Barker.*

YEATES J. By the eighth section of article first of the constitution of the *United States,* " congress have power to declare "war, and to raise and support armies." General laws must be enacted to effect these purposes, which may in some instances break in upon the municipal provisions of individual states. This part of the act of congress of the 11th of *January* 1812, on which the question arises, appears bottomed on the principles of the common law, which considers the relation of master and apprentice as not assignable, and does not seem to me to impair any law of this state.

When the public safety shall be supposed to require the

services of minors in the armies of the *United States*, I can see no impediment to a change of the relation between masters and their apprentices by mutual consent. They may lawfully vacate a contract entered into for their benefit respectively, without prejudicing the rights of others; it conduces to the common weal, and cannot be said to injure any one, or give just cause of complaint. The return to the *habeas corpus* brings the enlistment of *John Butcher* within the words and spirit of the act of congress. The words in the beginning of the eleventh section of the act, that recruiting officers " shall " be entitled to receive for every effective able bodied man, " who shall be duly enlisted for the term of five years, and " mustered, (and between the ages of *eighteen and forty-five* " *years*) the sum of two dollars," only relate to the compensation allowed to such officers, but do not prohibit the enlisting of minors under the age of eighteen, any more than healthy persons exceeding the age of forty-five years; and this more fully appears by the generality of the expressions in the concluding proviso of that section, " persons under " the age of twenty-one years."

The president of the *United States* is authorised to raise a certain number of regiments for the public defence, and fifers and drummers are necessary therein. It is well known that youths under the age of eighteen years, acquire proficiency in these capacities, with much greater facility than persons more advanced in life. Where such youths possess sufficient discretion to make choice of a military life, with the consent of their parents, guardians or masters, if any such they have, who are entitled to their services during their nonage, I see no reason why they should not be bound by their contract of enlistment. They owe duties to their country as well as more adult persons, and we are bound to presume, that such contracts will not be detrimental to them.

I think upon the whole, that *John Butcher* should be remanded to the custody of captain *Barker* his officer.

BRACKENRIDGE J. By the constitution of the *United States* " the congress shall have power to raise and support armies." I think the raising and supporting them an object to be favoured; a military establishment to the extent of the public exigences. That military establishment, which we have had

1813.

COMMON-
WEALTH
*v.*
BARKER.

in these states, I have considered in general as falling mise-
rably short of this. For I never had reliance on what are
called the militia, beyond the purpose of a *posse comitatus* to
preserve the peace, or occasional aid in repelling an invasion.
It must be a man's business to be a soldier, and the camp
must be his home, to render himself satisfied with his em-
ployment, and his services effective. The habit of subordina-
tion, and the discipline of tactics, are also essential. These
cannot be possessed in the first instance, or acquired but by
an apprenticeship to arms. I call it an apprenticeship, but I
have no idea that it was that kind of apprenticeship, or that
the profession of arms was that kind of trade or calling, art,
mystery, occupation or labour, which was contemplated by
any act of the legislature at any time in binding out by
indenture or otherwise. An apprenticeship in agriculture,
manufacture, or commerce, may be considered the great divi-
sions under which any trade or occupation may be consider-
ed as comprised; as respects the poor especially, for it is
rare that such will be taken to study physic, divinity or law,
or any art which requires a preceding education in some-
thing else. I cannot understand it as extending to the profes-
sion of arms. To that of a mariner it might extend, for this
is a peaceful pursuit, and connected with commerce. Under
the act of the 29th of *March* 1803, the managers of the poor are
authorised to put out to some trade or calling, poor children,
that is the children of such poor persons who are dead with-
out leaving property or kindred to provide for their children,
or who if living shall be found unable to maintain them.
Shall it be said that this trust can be executed by putting out
such to the professsion of arms? The power of these mana-
gers is *potestas sub potestate.* The community, the common-
wealth, which is the guardian in the first instance, has dele-
gated this trust by a special authority which cannot be
exceeded. What they could not do now, could not have
been done at the time the indenture in question was made.
But the power under the indenture is even more circum-
scribed than it was in the managers themselves. They could
choose the art, mystery &c., and the master to whom the ap-
prentice was put; but no power of this kind is given to the
master by assignment, even supposing it could have been
given; but it is specially excepted as not within his power. I

have no doubt but that by this act of the master's, the consenting to the enlistment, the indentures are cancelled, so far as respects the right to the services of the apprentice, and on application to the Sessions or the Mayor's Court, as the case may be, the apprentice would be discharged from the obligation of an apprentice to the master, and he would be answerable to the managers in damages. The power of a parent is without limit as to the right of service, and the power of the community which succeeds in this case to that of the parent; but the managers under the law of the community, have no such power given them, and the master can derive no such power from them. Could a guardian appointed by the Court, have such a power? I will not enter into that discussion, because it is not the case of a guardian chosen by the minor, and sanctioned by the Court. But clear I am, that the managers of the poor, or a master by indenture from them, can have no such power. We must suppose the officer enlisting to have looked at the indenture, and to have examined how far the master was solely master. He would have seen, that as he could not assign, he could not transfer service; and he would have applied to the persons binding, to have their consent, as this was a minor under their controul. This was the best that could be done in the case. The act of congress can have no bearing on this, but as directory to recruiting officers, and declaring the services of what persons they may be willing to accept, and the precautions necessary to avoid interfering with contracts and private rights. The act of congress can neither abridge nor enlarge these rights.

A person of age indenturing himself on becoming of age, exists a contracting party, and the contract can be dissolved by himself and that of the master. But it is the guardian who in the case of the minor contracts. The instruction of the minor and his services to the master, are but the subject of the compact. The managers of the poor are the guardians in this case, and the consent of these has not been given, nor could be given to any apprenticeship, but that specified and contemplated under a fair construction of their powers. Would the consent of the minor and that of the master have sufficed, when there was a parent to be consulted? It is the guardian here in place of the parent, whose

1813.

COMMON-
WEALTH
*v*
BARKER.

consent must be obtained. It is the managers of the poor that interpose here, and claim the liberation of the minor. It is what they have a right to do, or rather what they are bound to do, in discharge of the trust by law committed to them. It is of great moment in a republic, where the idea of a standing army has great prejudices against it, that in making it up, no undue advantage should be taken of the unwary, and that in maintaining it, every respect should be paid to pre-existing contracts; and I am well persuaded, that the act of congress never intended the smallest deviation, or ought to be so construed; and did a different construction force itself upon me, I would pay no regard to it. A negro slave might as well be taken away, or an ox or a horse labouring at the team, without the consent of him who has an absolute or a special property in their use. If a contract shall not be impaired, how shall it be dissolved and entirely taken away? I am of opinion therefore, that the enlistment in this case is void, and does not bind.

                                      Petitioner remanded.